## KELLEY-POWELL CO. v. J. A. LANDEN.

Eastern Section.   April 30, 1927.

Petition for Certiorari denied by the Supreme Court, July 28, 1927.

Cantrell, Meacham and Moon, of Chattanooga, for plaintiff in error.

Whitaker & Whitaker, of Chattanooga, for defendant in error.

THOMPSON, J.   This suit was instituted in the circuit court of Hamilton county by the plaintiff, J. A. Landen, to recover damages for personal injuries received by him by being struck by the defendant's automobile truck.   At the trial the defendant moved for a directed verdict at the conclusion of the plaintiff's evidence.   The trial court overruled this motion.   The defendant did not introduce any evidence, and the cause was submitted to the jury which returned a verdict in favor of the plaintiff for $6000.   The defendant's motion for a new trial having been overruled, it has appealed to this court and assigned errors.

The first question made by the assignments of error is that the plaintiff's own evidence shows that he was guilty of negligence proximately contributing to the accident which barred his recovery as a matter of law. As stated, the defendant stood upon its motion for a directed verdict and introduced no evidence whatever. The plaintiff's proof showed the following:

Plaintiff lived in Jackson county, Alabama, and about forty miles from Chattanooga. On the day before the accident he rode to Chattanooga with a neighbor of his in Jackson county, Ala., in the latter's automobile. At the time of the accident he was walking to the place where his friend's car had been left at a stable on the west side of Whiteside street, and about half way between the intersecting streets to the north and south—Whiteside street extending north and south—and was expecting to ride back to his home in said car. However, he was expecting to meet his friend at a drug store on the east side of Whiteside street about opposite said stable. He approached and reached Whiteside street from the east and in so doing he walked west along the first intersecting street north of the drug store. Then he walked south along the sidewalk on the east side of Whiteside street to the drug store where he expected to meet his friend. But his friend was not there, so he attempted to walk across Whiteside street from the east side to the west side and to the stable where the car was—and was therefore crossing Whiteside street in about the middle of a block.

Before he left the sidewalk on the east side he saw cars going in both directions, and also saw some cars parked on the west side of the street. He did not notice any cars parked on the east side, but his witness, Gross, who was on the west side, says that there were some cars parked on the east side although not immediately at the point from which plaintiff started to cross. Plaintiff looked both north and south and seeing no approaching cars which he thought would endanger him, he started to cross the street—almost at right angles but perhaps angling slightly to the south. He had taken but a few steps and had not reached the center of the street when he was struck by the truck which was going south. The plaintiff and his witness, Gross, say that the truck was running at a speed of about thirty miles per hour, and on the wrong side of the street. They also say that its driver seemed to be looking at a building on the east side of the street and did not see plaintiff until the truck struck him. Also, that the truck was bearing still further to its left and wrong side of the street at the time it struck plaintiff, although there was no reason at all why it should have been on the wrong side of the street. Plaintiff further testifies that although he was upon the lookout he did not see the truck until it was almost upon him and too late to get out of its way. The truck knocked plaintiff down, dragged

him ten or twelve feet, and then ran a considerable distance down the street before it could be stopped.

It seems to us that under the foregoing statement of facts the plaintiff was clearly entitled to go to the jury on the question of contributory negligence. There was no ordinance prohibiting him from crossing in the middle of the block, and he had at least some reason for attempting to cross where he did. Although Whiteside street is one of the main thoroughfares of Chattanooga and has a great deal of travel on it, we do not think it should be held that the mere fact that plaintiff attempted to cross it in the middle of the block was such contributory negligence as barred his recovery as a matter of law. He and Gross both say that he looked both ways before starting to cross, and he had taken only a few steps when he was struck by a truck which was travelling on the wrong side of the street and at an excessive rate of speed. Until he reached the center of the street he would naturally and reasonably be upon a more alert lookout for cars coming from the south than from the north, and it seems to us therefore that the fact that he did not see the truck which struck him until it was within a few feet of him does not necessarily show that he was not upon a reasonable lookout for his own safety. Had the truck been coming from the south, or had there existed a situation on the west side of the street which made it apparent that a car coming from the north would likely come upon the east side of the street, there might have been some basis upon which to hold that he should have seen the truck which struck him sooner than he did. But no such situation existed, and indeed the proof shows, as has been stated, that the truck was angling still further to its left at the time it struck him.

For the foregoing reasons we think a reasonable mind could well draw the conclusion that the plaintiff was not guilty of negligence which proximately contributed to the accident. And it is only where the evidence is uncontradicted and a reasonable mind could draw no other conclusion, that a trial judge is justified in taking the question of the plaintiff's contributory negligence away from the jury.

The next question raised by the assignments of error is that although plaintiff introduced evidence (but not by registration) showing that the truck belonged to the defendant, yet there was no evidence that the driver was the defendant's agent, was on the defendant's business and was acting within the scope of his employment, etc., and therefore that a verdict should have been directed. The plaintiff did not prove that the truck was registered in defendant's name, but he did testify that it was defendant's truck which struck him. The witness, Gross, testified that it was defendant's truck which struck plaintiff and that it had the defendant's name upon it.

And the jury has found that it was defendant's truck which struck plaintiff. So we think that ownership was amply proven, although not by proof of registration. But there was no proof that the driver was the defendant's agent, was engaged in the defendant's business, or was acting within the scope of his employment, etc. Since we have held in several cases which have been affirmed by the Supreme Court that proof of ownership, although not by proof of registration, is sufficient under the acts, we will not again review the question. We are impressed by the argument of the defendant's attorneys, but the question is not now an open one in this court and any modification which may be made in the present construction of the acts should first, be made by the Supreme Court. This contention of the defendant is therefore overruled.

The next question made by the assignments is that the trial court erred in overruling a motion for a continuance made by the defendant. Upon this question the record shows the following:

The declaration alleged that the "lower part of plaintiff's diaphragm" was broken, that his right hip was broken, and that his feet, legs, arms and hands were injured and bruised, etc. On July 9, 1926, the plaintiff filed a motion to amend his declaration by inserting an additional allegation to the effect that the plaintiff's pelvis or rami bone was fractured and displaced and that said injury was permanent and caused plaintiff to suffer much pain, etc.

On July 12, 1926, an order was entered sustaining the motion and amending the declaration.

On July 23, 1926, the defendant filed a motion for a continuance until the next term of court.

On July 26, 1926, which was the day upon which the case had been set for trial the defendant's motion for a continuance was taken up first and argued, and the defendant's attorney made a statement as upon oath to the effect that on account of the amendment it was necessary to make an entirely new investigation, that he had information that plaintiff had been an invalid or had been unable to work for a long time prior to the accident, that plaintiff lived several miles from a railroad, and that he needed time in which to complete his investigation in order to do justice to his client. The burden of his argument and statement was that if given time he could show that plaintiff's disabilities and inability to work existed prior to the accident and were not the result of the fracture of the pelvis or rami bone. The court overruled the motion for a continuance, and the trial of the case was begun upon the same day, i. e., July 26, 1926, the verdict of the jury being entered on July 27, 1926.

On July 30, 1926, ten days additional time in which to file a motion for a new trial was allowed the defendant.

On August 6, 1926, the defendant filed a motion for a new trial, and on August 9, 1926 it filed an amendment setting out two additional grounds.

On September 1, 1926, the defendant's motion for a new trial came on for hearing, and a juror testified as to some statements which one of the jurors made in the jury room (to be hereinafter dealt with) but no evidence or affidavits were introduced in support of the ground of the motion for new trial based upon the overruling of the motion for a continuance.

So it appears that defendant had from July 9, 1926 (the day upon which the motion to amend the declaration was filed) until September 1, 1926 (the day the motion for a new trial was heard) and yet introduced no evidence showing or even tending to show that plaintiff was disabled prior to the accident. Moreover, the defendant made no motion to require the plaintiff to submit to any physical examination. In addition to this, the hospital at which plaintiff remained for five weeks after the accident was located at Chattanooga, and the doctor who treated plaintiff was a Chattanooga doctor and in fact operated said hospital.

In view of the foregoing facts we fail to see wherein defendant was prejudiced or wherein the trial court abused his discretion. The assignment is therefore overruled.

The next assignment is based upon statements made by one of the jurors in the jury room in the presence of the other jurors and while they were considering what verdict to render. On the hearing of the motion for a new trial one of the jurors testified that another juror stated in the jury room while they were considering their verdict that the upstairs apartments in the buildings on the east side of Whiteside street in the block where the accident happened were occupied by women of questionable character, that he had seen drivers of passing cars look up at them and "flirt" with them, and that the driver of the car which struck plaintiff may have been doing that and that that might have been the reason he did not see plaintiff. But this juror also testified that none of the other jurors discussed the probability that the driver of the car which struck plaintiff might have been looking at the women, and nothing was said by any of them about it. He also testified that it had no influence on him in deciding what verdict they should render.

It is true, as has been stated, that both plaintiff and his witness, Gross, testified that the driver of the car which struck plaintiff seemed to be looking at the buildings on the east side of the street, and the juror's statements naturally tended to corroborate this testimony of the plaintiff and his witness. But it should be remembered that their testimony was not disputed or contradicted by any other testimony, and they further testified that said driver was running

thirty miles per hour in violation of the ordinance of Chattanooga, limiting speed to fifteen miles per hour and which ordinance was pleaded and proven by the plaintiff. Indeed, the attorneys for the defendant do not now contend that the truck driver was not negligent. In fact, they admit that he was negligent, and only insist that the plaintiff also was guilty of negligence proximately contributing to the accident. Moreover, the motion for a directed verdict made at the conclusion of the plaintiff's evidence and upon which the defendant stood without introducing any evidence, was wholly upon the ground that plaintiff failed to prove ownership by the defendant of the truck which struck plaintiff, and failed to prove that the driver was the agent of the defendant, was engaged in the defendant's business and was within the scope of his employment.

So we are thoroughly convinced that the remarks of the juror could not have prejudiced the defendant, and the assignment is therefore overruled.

The last assignment is that the verdict was excessive.

At the time of the accident plaintiff was sixty-two or sixty-three years of age. He was an able bodied man and supported his wife and several children, the oldest of whom was a girl seventeen years of age, on a farm. He weighed 145 pounds and could do a full day's work.

Since the accident he weighs only 128 pounds and can only work a few hours a day. In addition to blows and cuts upon the head which rendered him unconscious for many hours and which had to be sewed up, and bruises and lacerations about his body and limbs, he sustained a complete fracture of the pelvis bone. This bone supports the weight of the body and has an opening in it through which important nerves pass. The fracture of this bone at first closed this opening, but Dr. Banks by skillful treatment succeeded in opening it to one-half its original size. But there is still a pressure upon the nerves which weakens plaintiff, causes him pain and makes him limp when walking. Dr. Banks testified that plaintiff's condition will improve somewhat but is permanent and that plaintiff will always be partially disabled.

Plaintiff had three teeth knocked out, and as stated by Dr. Banks, "was half nutty for a good while" after the accident. His injuries were very painful and he remained in the hospital either five or six weeks—where his bill was $594. Then he was taken to the home of his son at Chattanooga where he remained for about ten days before he was taken to his own home in Alabama.

In view of the foregoing we do not think it can be said that the verdict for $6000 was excessive, and the assignment will be overruled.

It results that in our opinion there was no error in the judgment of the trial court and the same will be affirmed. The costs of the appeal will be adjudged against the defendant and the sureties on its appeal bond.

Portrum and Snodgrass, JJ., concur.